1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11 | PHILLIP MARTINEZ,

Case No. 5:15-cv-02160-TJH (AFM)

12 |             Plaintiff,

13 |     v.

14 | UNITED STATES BUREAU OF PRISONS, *et al*.,

**AMENDED REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

15

16 |             Defendants.

17

18       This Amended Report and Recommendation is submitted to the Honorable

19 Terry J. Hatter, Jr., United States District Judge, pursuant to the provisions of 28

20 U.S.C. § 636 and General Order 05-07 of the United States District Court for the

21 Central District of California.

22       On June 12, 2019, the undersigned Magistrate Judge issued a Report and

23 Recommendation ("Initial R&R") (ECF No. 152), which recommended granting a

24 motion to dismiss (ECF No. 127) and dismissal of all claims in the Fifth Amended

25 Complaint against Defendants Academia, Duden, Ives, McCollough, Oudeh,

26 Shulman, Sylvester, and Zumkehr without further leave to amend and with prejudice.

27 Plaintiff filed objections (ECF No. 160), and Defendants filed a response to the

28 objections (ECF No. 162).

After the Initial R&R was filed, two remaining Defendants in the case who had recently been served (Warren and Samuels) filed their own motions to dismiss, relying on the same grounds stated in the R&R. (ECF Nos. 156, 157.) The Court has also been informed that only other Defendant in the case, J. Patricia Wilson Smoot (former Chairperson of the U.S. Parole Commission) has died. (ECF No. 158.)[1] To efficiently resolve the three pending motions to dismiss and to take in account certain of Plaintiff's objections to the Initial R&R, this Amended Report and Recommendation ("Amended R&R") addresses the motion to dismiss of Defendants Academia, Duden, Ives, McCollough, Oudeh, Shulman, Sylvester, and Zumkehr (ECF No. 127); the motion to dismiss of Defendant Warren (ECF No. 156); and the motion to dismiss of Defendant Samuels (ECF No. 157.)

## I.      SUMMARY OF PROCEEDINGS

On October 19, 2015, Plaintiff Phillip Martinez, a former federal prisoner, who at certain relevant times was incarcerated at United States Penitentiary, Victorville, California ("USP-V") and Federal Correctional Institution, Lompoc, California ("FCI-L"), filed this *pro se* civil rights action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). On December 16, 2015, Plaintiff was granted leave to proceed without prepayment of the full filing fee. (ECF No. 14.) On December 28, 2015, Plaintiff sought leave to file a First Amended Complaint which the Court granted. (ECF No. 20.)

On February 2, 2016, Plaintiff filed a First Amended Complaint. (ECF No. 25.) In accordance with the terms of the Prison Litigation Reform Act of 1995, the Court[2] screened the First Amended Complaint prior to ordering service. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1). Finding that Plaintiff's

---

[1]   The Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of Action in the FAC were asserted only against Defendant Smoot.

[2]   The case was originally assigned to Magistrate Judge Bristow. Due to Judge Bristow's retirement, the case was reassigned to the undersigned Magistrate Judge on June 21, 2017. (ECF No. 94.)

allegations appeared insufficient to state a claim and appeared to be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), on March 1, 2016, the Court issued an order dismissing the First Amended Complaint with leave to amend.  (ECF No. 26.)

On March 24, 2016, Plaintiff filed a Second Amended Complaint (ECF No. 27), the gravamen of which appeared to be the same as that of the First Amended Complaint.  After screening the Second Amended Complaint, the Court ordered service upon Defendants Salvester, Oudeh, Academia, Zunker, Shulman, Duden, and McCollough in their individual capacities.  (*See* ECF Nos. 28-32.)[3]  Finding that the Second Amended Complaint failed to state a claim against the other Defendants, Plaintiff was advised that should he desire to pursue an action against the other named Defendants, he must file a Third Amended Complaint.  (ECF No. 28.)

On May 23, 2016, Plaintiff filed a Third Amended Complaint.  (ECF No. 36.)  The Court screened the Third Amended Complaint prior to ordering service.  Finding that some of the allegations appeared barred by *Heck* and insufficient to state a claim for monetary damages, the Court issued an order dismissing the Third Amended Complaint with leave to amend on June 24, 2016.  Plaintiff was advised that if he still desired to pursue this action, he must file a Fourth Amended Complaint.  (ECF No. 37.)

On July 13, 2016, Plaintiff filed a Fourth Amended Complaint.  (ECF No. 40.)  On January 12, 2017, the United States Parole Commission ("USPC") and the United States Bureau of Prisons ("BOP") filed a motion to dismiss the Fourth Amended Complaint.  (ECF No. 54.)  Plaintiff filed an opposition on February 13, 2017.  (ECF No. 64.)  In the opposition, Plaintiff agreed that the BOP should be dismissed from this action.  (ECF No. 64 at 2.)  Plaintiff also requested leave to amend the operative pleading to name the individual Defendants in their individual capacities.  (*Id*. at 4-

---

[3]  At the time of Magistrate Judge Bristow's April 2016 order directing service of the Second Amended Complaint, Supreme Court had not issued its decision in *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843 (2017).  Judge Bristow's order also stated that it was without prejudice to defendants challenging the sufficiency of the claims by motion. (ECF No. 28 at 5.)

5.)  On September 15, 2017, Plaintiff's Fourth Amended Complaint was dismissed with leave to amend, and the motion to dismiss was denied without prejudice as moot. (ECF No. 102.)

On July 24, 2018, Plaintiff filed his Fifth Amended Complaint ("FAC").  (ECF No. 119.) On September 28, 2018, Defendants Rachael Academia, Scott Duden, Richard Ives, Roan McCollough, Abed Oudeh, Nathaniel Shulman, Chevon Sylvester, and Jonathan Zumkehr filed a Motion to Dismiss.  (ECF No. 127.)  On October 24, 2018, Plaintiff filed a "Verified Second Opposition to Defendants' Motion to Dismiss Claims against the Bureau of Prisons and the individual Defendants."  (ECF No. 129.)  On November 14, 2018, "Defendants' Reply in Support of Motion to Dismiss Claims Against Bureau of Prisons Defendants in the Fifth Amended Complaint" was filed.  (ECF No. 132.)

On June 12, 2019, the undersigned Magistrate Judge issued the Initial R&R (ECF No. 152), which recommended dismissal of all claims in the Fifth Amended Complaint against Defendants Academia, Duden, Ives, McCollough, Oudeh, Shulman, Sylvester, and Zumkehr without further leave to amend and with prejudice. Plaintiff filed objections (ECF No. 160), and those eight Defendants filed a response to the objections (ECF No. 162).

On July 8, 2019, Defendant Alex Warren filed a "Motion to Dismiss Plaintiff's Fifth Amended Complaint" (ECF No. 156). On that same date, Defendant Charles E. Samuels filed a "Motion to Dismiss Plaintiff's Fifth Amended Complaint" (ECF No. 157).  On July 31, 2019, Plaintiff filed a "Verified Opposition to Defendants' Samuels and Warren's Motion to Dismiss Plaintiff's Fifth Amended Complaint." (ECF No. 163.)  Defendants Warren and Samuels then filed a joint reply (ECF No. 164) in support of their motions to dismiss.

For the reasons set forth below, it is recommended that Defendants' Motions to Dismiss be granted and that the FAC be dismissed with prejudice and without

leave to amend.[4]

## II.    FACTUAL ALLEGATIONS OF THE FAC

According to the allegations of the FAC, after "voluntarily turn[ing] himself into authorities to resolve [an] outstanding administrative parole violation for absconding," Plaintiff entered into an agreement with the USPC in July 2015, to serve an eleven-month sentence "in exchange for his plea of guilty to the parole violation." (FAC at 9.)  After Plaintiff signed the agreement, USPC agents allegedly used false information to increase Plaintiff's salient factor score to impose a longer prison term. (*Id.*)  Further, agents of USPC together with agents of the BOP "intentionally" and "maliciously" fabricated data and submitted the same to the "Designation & Sentence Computation Center," which resulted in Plaintiff's incarceration in a maximum security prison.  (*Id.*)

Plaintiff notified BOP agents that his "custody-security level was incorrect and statutory law prohibited his transfer to a maximum security prison."  (*Id.* at 10.) Thereafter, according to the FAC, Plaintiff's legal files were "confiscated," and he was "transferred" to USP-V.  (*Id.*)  Upon arrival at USP-V, Plaintiff notified the intake officer that his "custody-security classification" was "illegal and in violation of BOP policies and statutory law."  (*Id.*)  As a result of his intake interview, "Plaintiff was classified for placement in the General Prison Population based on his race as a 'Mexican' and geographical location relating to 'gang' connected groups." (*Id.*)  Plaintiff protested this classification.  (*Id.*)  Once in general population, Plaintiff was informed that he had to join a gang or "pay rent."  (*Id.* at 10-11.)  This collection of rent "or extortion" payments was known to prison officials.  (*Id.* at 11.)

The FAC alleges that from July 30, 2015, through October 10, 2015, all of Plaintiff's requests for inmate grievance and parole appeal forms were ignored or

---

[4] In this Amended R&R, "Defendants" refers to all defendants in the case who have been served and have filed motions to dismiss (unless the context clearly indicates otherwise), and the term "Motions to Dismiss" refers to the three pending motions to dismiss (ECF Nos. 127, 156, 157).

denied.  (*Id*. at 12.)  On August 21, 2015, Plaintiff was confined to cell number 130, where he remained 24 hours a day for the next 35 days.  (*Id*.)  All requests for legal materials, exercise, medical services, grievance forms, hygiene products, visits, phone calls, and religious reading material were allegedly denied.  (*Id*.)  During his 35-day confinement, Plaintiff alleges that he was fed a diet inconsistent with his medical diagnosis and his status as a chronic care patient:  His diet consisted solely of bologna and cheese sandwiches.  (*Id*.)  The bologna and cheese diet caused "continuing symptoms of light headiness and nausea."  (*Id*.)  During his confinement, all outside communication was denied.  (*Id*. at 13.)  The FAC alleges that prison staff told Plaintiff that the reason for his 24-hour confinement to cell 130 was for "punishment."  (*Id*.)  During said confinement, Plaintiff's cell was allegedly "shook down."  (*Id*.)  All of Plaintiff's personal property was removed and not returned.  (*Id*.)

The FAC alleges that two BOP personnel intentionally filed a false incident report in November 2015, which was used to "suspend Plaintiff's right of access to the court, access to legal materials, and use of telephone to communicate with family."  (*Id*. at 15.)  As a condition of Plaintiff's release from prison, he was required to sign a "General Conditions" document, which provided: "Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision (2) extend the term of supervision, and/or modify the conditions of supervision."  (*Id*.) (internal quotations omitted).  While on supervised parole, Plaintiff was required to report for drug testing at a site "approximately 18.2 miles" from his home.  (*Id*. at 16.)  It is alleged that Plaintiff was ordered to report daily, even though his drug evaluation found that he "was not a drug dependent person," the travel imposed an economic hardship, and the travel time prevented him from finding and keeping a job.  (*Id*.)  On March 22, 2018, Plaintiff submitted a written request to terminate parole.  (*Id*.)  As of July 20, 2018, his request had gone unanswered, even though he was eligible for parole termination.  (*Id*. at 16, 25.)

Based on these allegations, the FAC asserts fourteen claims. Each claim includes a summary of alleged conduct and a list of alleged constitutional violations.

## III.   LEGAL STANDARDS

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether the pleading states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to plaintiff. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 134 S. Ct. 2056, 2065 n.5 (2014) (citing *Iqbal*, 556 U.S. at 678). Rather, a court first "discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1322 (2014). Then, "dismissal is appropriate where the plaintiff failed to allege enough facts to state a claim to relief that is plausible on its face." *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) (internal quotation marks omitted).

Further, since Plaintiff is appearing *pro se*, the Court must construe the allegations of the pleading liberally and must afford Plaintiff the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Alvarez v. Hill*, 518 F.3d 1152, 1158 (9th Cir. 2008) (because a prisoner was proceeding *pro se*, "the district court was required to 'afford [him] the benefit of any doubt' in ascertaining what claims he 'raised in his complaint'") (alteration in original). Nevertheless, the Supreme Court has held that, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted, alteration in original); *see also Iqbal*, 556 U.S. at 678 (To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal citation omitted)); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation").

## IV.   DISCUSSION

Defendants assert the following grounds for dismissal: (1) Plaintiff's FAC fails to comply with Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 12(b)(6); (2) the Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); (3) Plaintiff has failed to state a *Bivens* claim; (4) Defendants are entitled to qualified immunity as to all such claims against them; (5) Plaintiff's FAC should be dismissed for misjoinder; and (6) to the extent Plaintiff's claims implicate the validity of his underlying "probation violation," they are barred by the favorable termination rule of *Heck v. Humphrey*. (ECF No. 127 at 14.)  Defendants' motions do not challenge Plaintiff's eighth through twelfth causes of action because those claims relate only to J. Patricia Wilson Smoot (now deceased).  Defendant Samuels also argues that the FAC should be dismissed as to him because he was not properly served.

As discussed below, Plaintiff's FAC should be dismissed for three independent grounds: failure to present a viable *Bivens* claim, failure to state a claim upon which

relief may be granted, and failure to comply with Rule 8.[5]

## A.   Plaintiff's First, Second, and Third Causes of Action

Plaintiff's first, second, and third causes of action stem from the same factual allegations.  Plaintiff alleges that beginning on August 21, 2015, he was confined to his cell for 35 days in violation of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments.  (FAC at 12 ¶ 36; 17-18 ¶¶ 52-54.)  During this confinement, Plaintiff alleges that he was denied access to the courts and his legal materials; he was denied visits and telephone calls; he could not avail the administrative remedy procedure; he was denied exercise, medical care, and religious reading materials; and Defendants illegally seized, confiscated, or destroyed his personal property and legal documents.  Plaintiff further alleges Defendants confined him as "punishment" with the "intent to injure, oppress, retaliate, threaten or intimidate."  (*Id.* at 13 ¶ 39; 17-18.)  Defendants note that the prison was on institutional lockdown from "August 21 until September 21, 2015, and September 24 until September 30, 2015."  (ECF No. 127 at 22 n.9.)

### 1. *Bivens* Analysis

The Court must "decide whether a *Bivens* remedy is available in light of the Supreme Court's decision in *Abbasi*."  *Fazaga v. Federal Bureau of Investigation*, 916 F.3d 1202, 1243 (9th Cir. 2019).  To state a *Bivens* claim, a plaintiff must show that: (1) the plaintiff has a constitutionally protected right; (2) a federal official violated that right; (3) the plaintiff lacks an alternative remedy; and (4) no immunity can be raised by the defendant.  *See Abbasi*, 137 S. Ct. at 1849-60; *Chappell v. Wallace*, 462 U.S. 296, 298 (1983).  Where a plaintiff has plausibly alleged a *Bivens* claim, the Court must decide whether it is appropriate to imply a *Bivens* remedy.

To imply a *Bivens* remedy, a court must first determine whether the claim arises in a "new context."  *Abbasi*, 137 S. Ct. at 1859.  "If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then

---

[5] Because the FAC is subject to dismissal on these grounds, the Court need not address the other arguments raised in the Motions to Dismiss.

the context is new." *Id*.  The Supreme Court has previously permitted a *Bivens* remedy in three cases.  In *Bivens* itself, the Court held that a federal agent who commits an unconstitutional search and seizure can be held liable in damages through a right of action implied under the Fourth Amendment.  In *Davis v. Passman*, 442 U.S. 228, 234 (1979), the Supreme Court held that an employee terminated on account of her gender could seek damages from her former employer, a U.S. Congressman, under the Fifth Amendment.  In *Carlson v. Green*, 446 U.S. 14, 18 (1980), the Court permitted a *Bivens* action under the Eighth Amendment against senior prison officials who exhibited deliberate indifference to a prisoner's serious medical need.

Where a court finds that the context is new, it then must engage in a "special factors" analysis. *Abbasi*, 137 S. Ct. at 1860.  In conducting a special factors analysis, a court analyzes whether there are alternative remedies available to the plaintiff or other "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy." *Id*. at 1865.  "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id*.  Since *Abbasi*, the Ninth Circuit has held that if a plaintiff has adequate alternative remedies, a court may decline to expand *Bivens* without consideration of other special factors that would counsel hesitation to extend *Bivens. See Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018).  Moreover, if there are special factors that "counsel hesitation," a court must decline to extend a *Bivens* remedy. *Abbasi,* 137 S. Ct. at 1875.  While the Supreme Court has not defined the phrase "special factors counselling hesitation," "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1857-58.

### a.  First Amendment

Plaintiff alleges that Defendants violated his First Amendment rights by restricting visitation and phone calls, denying him religious reading materials,

preventing access to the courts and administrative remedy procedures, and retaliating against him.  The Supreme Court has not implied a *Bivens* action under any clause of the First Amendment.  *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims"); *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) ("The Supreme Court has never explicitly recognized a *Bivens* remedy for a First Amendment claim").[6]  Previous Ninth Circuit cases that considered extending a *Bivens* remedy to First Amendment claims must be read in light of *Abassi's* requirements.  Because neither the Supreme Court nor the Ninth Circuit have expanded *Bivens* to First Amendment claims regarding restrictions by a prison on an inmate's communications, reading materials, and access to courts and administrative remedies, Plaintiff's claims present new contexts under *Bivens.*  Therefore, the Court must consider whether there is any alternative, existing process for protecting Plaintiff's interests and potentially whether special factors also counsel against extension of *Bivens* to Plaintiff's claims. *See Vega*, 881 F.3d at 1153 ("But because neither the Supreme Court nor we have expanded Bivens in the context of a prisoner's First Amendment access to court . . . , the circumstances of Vega's case against private defendants plainly presents a 'new context' under *Abassi*."

Under *Abbasi*, "any alternative, existing process for protecting the [plaintiff's] interests" is a compelling reason to "refrain" from extending a *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1858 (citations omitted).  Here, Plaintiff had alternative remedies available to him, including the Bureau of Prisons administrative grievance process, a federal tort claims action, or the filing of a writ of habeas corpus.  The FAC shows that that Plaintiff (at least informally) utilized the administrative grievance process to attempt to resolve his claims when he submitted written requests to the warden and discussed his concerns with his case manager − who told him that

---

[6]  The Ninth Circuit in *Vega* noted that it had (pre-*Abassi*) held that *Bivens* may be extended to a First Amendment claim that alleged FBI agents had acted with impermissible motive in curbing the plaintiff's protected speech. *See Vega*, 881 F.3d at 1153.

she would "put him in for a 4-month halfway house placement." (FAC at 11-12.)[7] Further, Plaintiff filed a petition for writ of habeas corpus on January 15, 2016. (*See* CACD No. CV 16-360, ECF No. 1.)

With respect to whether there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy in order to respect the role of Congress." *Abbasi*, 137 S. Ct. at 1858. "The Court's precedents now make clear that a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." *Id.* at 1857 (internal quotation marks omitted). Moreover, the fact that Congress has been active in the area of prisoner rights (for example, via enactment of the PLRA) but has not created a private right of action for damages against federal employees is "strong evidence of the inappropriateness of doing so through judicial implication" under *Bivens*. *Williams v. Verna*, 2018 WL 5777365, at *8 (E.D. Cal. Oct. 31, 2018) citing *Abbasi* and *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988).

Thus, alternative remedies are available, and special factors counsel hesitation in these new contexts – strongly showing that a *Bivens* cause of action should not be implied for Plaintiff's First Amendment claims. This conclusion is consistent with that reached by other courts on First Amendment claims. *See Free v. Peikar*, 2018 WL 1569030, at *2 (E.D. Cal. Mar. 30, 2018) ("Nationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment.") (collecting cases); *see also Schwarz v. Meinberg*, 761 Fed. App'x 732, 734-35 (9th Cir. 2019), *reh'g denied*, en banc, 2019

---

[7]  Plaintiff stated in his objections to the Initial R&R that he was denied access to the grievance process. However, the FAC affirmatively alleges in several places that Plaintiff submitted "written requests" to prison officials. (FAC at 11 ¶ 32 (Plaintiff "submitted numerous requests to defendant Richard Ives"; 12 ¶ 36 (certain Defendants responded to Plaintiff's requests "via written response"). To be sure, the FAC also alleges that most (if not all) of Plaintiff's requests were denied after consideration by the prison officials, but denial of a request does mean the grievance process was unavailable to Plaintiff.

U.S. App. LEXIS 12909 (9th Cir. Cal., Apr. 29, 2019) (declining to extend *Bivens* to First and Fifth Amendment claims because plaintiff could have sought a remedy under the Federal Tort Claims Act, or through injunctive remedies and because extending the remedy would substantially affect government operations and unduly burden BOP officials).

### b. Fourth Amendment

Plaintiff alleges that certain Defendants violated his constitutional rights by "illegally seizing, confiscating, or destroying his legal documents and personal property without following proper policies, procedures or directives under 28 C.F.R. § 553.10." (FAC at 18 ¶ 54.) It appears that Plaintiff is alleging that his documents went missing during transfer and during a shake-down of his cell. (*Id*. at 4 ¶ 6; 5 ¶ 8; 6 ¶ 13; 10 ¶ 28; 13 ¶ 40.)

The Court notes that prisoners have no reasonable expectation of privacy in their cells entitling them to Fourth Amendment protection against unreasonable search, seizure, destruction, or conversion of their property. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984) ("the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells"); *accord Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989). Even where a prison employee "intentionally and without authorization deprives a person of his property, the employee does not violate the [Constitution] if a meaningful post-deprivation remedy for the loss is available." *Campbell v. Chaves*, 402 F. Supp. 2d 1101, 1102-03 (D. Ariz. 2005) (citing *Hudson*, 468 U.S. at 533). The Ninth Circuit "will not recognize a *Bivens* claim where there is 'any alternative, existing process for protecting' the plaintiff's interests." *Fazaga*, 916 F.3d at 1242 (citations omitted).

Here, Plaintiff has an alternative process for protecting his interests – the BOP Administrative Remedy Program ("ARP"). Section 553.10 gives a warden discretion to determine what property prisoners may possess. *See* 28 C.F.R. § 553.10. Complaints about the implementation or violation of this policy should be directed

through the prison's ARP procedure.  While the FAC asserts that various Defendants were preventing Plaintiff from accessing the ARP, it also alleges that he made a number of written requests to prison officials and thereby availed himself of one or more of the administrative remedy procedures, at least informally.  For example, the FAC alleges that "[o]n or about January 11, 2016, Plaintiff submitted a written request to agents of the BOP requesting return of his legal documents, claiming that, on three (3) separate incidents Bureau of Prisons employees deliberately seized and confiscated Plaintiff's legal files in retaliation for Plaintiff exercising his 1st Amendment right of access to the court.  The BOP subsequently denied Plaintiff's request for return or compensation for the loss of property, including his legal files." (FAC at 14 ¶ 43.)   Plaintiff references three dates, "08/25/2015, 08/29/2015, 09/03/2015," on which he submitted written requests to the warden. (*Id*. at 12 ¶ 36.) These dates are within the 35-day period during which Plaintiff alleges that he was confined to his cell.  (*Id*. at 10 ¶ 31; 12 ¶ 36.) He further alleges that on September 28, 2015 he received a written response from Defendants Ives, McCollough, Sylvester, Academia, and Oudeh.  (*Id*. at 11-13.)  Although Plaintiff alleges that the requests were later denied, that does not mean that grievances procedures are unavailable. Plaintiff also alleges that he communicated with his attorney during his incarceration and that "[b]etween September and October 2015," his attorney obtained a parole appeal form for him.  (*Id*. at 13 ¶ 41.)

In addition to the ARP, a federal prisoner may maintain an action for damages against the United States under the Federal Tort Claims Act for injuries sustained as a result of negligence on the part of a government employee.  *See United States v. Muniz*, 374 U.S. 150, 165-66 (1963); *Smyer v. United States*, 588 Fed. App'x 693 (9th Cir. 2014).  In the Ninth Circuit, this remedy includes claims for the destruction of property.  *See Campbell,* 402 F. Supp. 2d at 1103.  Moreover, as discussed above, Congress's failure to create a private right of action for damages – when it otherwise has been active regarding prisoner litigation – indicates that *Bivens* should not be

extended.  *See Williams*, 2018 WL 5777365, at *8.  Thus, assuming Plaintiff has stated a cognizable claim under the Fourth Amendment, extension of *Bivens* to Plaintiff's claim for destruction of personal property is inappropriate because alternative remedies are available and special factors counsel against implication of a *Bivens* remedy.

### c. Eighth Amendment

Plaintiff alleges two Eighth Amendment claims in this regard.  First, he alleges that Defendants denied him the opportunity to exercise.  (FAC at 12 ¶¶ 36-37; 17 ¶ 53.)  Second, he alleges that Defendants failed to treat his hypertension or, in the alternative, to respond to his requests for medical treatment.  (*Id*.)  Thus, these Eighth Amendment claims arise in two categories: a non-medical claim (denial of exercise) and a medical claim (denial of treatment for his hypertension).

Although the Supreme Court in *Carlson* recognized a *Bivens* remedy under the Eighth Amendment, this does not mean that a *Bivens* remedy is automatically extended to every Eighth Amendment claim.  *See Abbasi*, 137 S. Ct. at 1864 ("[E]ven a modest extension [of *Bivens*] is still an extension.").  In *Carlson*, the Supreme Court found that a monetary remedy should exist where prison employees denied medical treatment in a way that the court of appeals described as "so clearly inadequate as to amount to a refusal to provide essential care, so inappropriate as to evidence intentional maltreatment causing death."  *Green v. Carlson*, 581 F.2d 669, 675 (7th Cir. 1978).

In the present case, the alleged deprivation is demonstrably different in kind and severity from that of *Carlson* and therefore presents a new context under the *Abbasi* analysis.  Plaintiff's letters to and responses from the Warden show that plaintiff had alternative administrative remedies to a *Bivens* action.  Although the remedies available via the prison's internal procedures do not provide monetary relief, they are among the alternative processes that courts must consider in determining whether to extend a *Bivens* claim.  *See Abbasi*, 137 S. Ct. at 1865; *see*

*also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 69 (2001) ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.") (citation omitted).  In declining to extend *Bivens* to other Eighth Amendment claims, the Ninth Circuit has held that Federal Tort Claims and injunctive remedies are adequate alternatives remedies.  *See Schwarz,* 761 Fed. App'x at 734-35; *see also Thomas v. Matevousian*, 2019 WL 266323, at *1-2 (E.D. Cal. Jan. 18, 2019) (finding that the existence of the PLRA and absence of Congressional action counseled against extending *Bivens* to plaintiff's conditions of confinement claim involving allegations that the plaintiff was denied deodorant, razor, shampoo, writing paper, and envelopes for forty days.); *Williams*, 2018 WL 5777365, at *7 (finding that *Bivens* should not be extended to allegations that correctional officers retained the plaintiff in a holding cell and denied his request to use the bathroom facilities in order to compel him to inform officers who was in possession of drugs, and forced him to walk the facility partially unclothed because of the existence of the PLRA and absence of Congressional action).  In addition, as courts have recognized, Congress enacted the PLRA, but did not create a private right of action for damages.  This counsels against finding an implied *Bivens* cause of action.  *See, e.g., Williams*, 2018 WL 5777365, at *8.[8]

Plaintiff's claim for denial of medical treatment has some similarities to *Carlson* – but only to the extent that it pertains to medical care.  Again, however, the specifics of Plaintiff's allegations are dissimilar in their nature and severity of those in *Carlson*. The prisoner in *Carlson* had been diagnosed as a chronic asthmatic when he entered the federal prison system.  *See Green v. Carlson*, 581 F.2d at 671.  Three years later, his condition required hospitalization.  *Id*.  When he returned to prison after eight days in the hospital, prison officials failed to follow the hospital physician's orders.  *Id*.  Consequently, the prisoner suffered an asthma attack.  In the

---

[8] Moreover, as discussed below, Plaintiff's allegations in the FAC do not meet the pleading requirements of Rule 12(b)(6) and Rule 8.

eight hours between the onset of the attack and the prisoner's death, no physician was called in, the prisoner was left alone, and the equipment used to attempt to revive the prisoner was broken, with the defendants' knowledge. *Id.* Complicating matters further, the staff on duty administered "a drug that was contraindicated for one suffering an asthmatic attack." *Id.* Finally, as the prisoner suffered respiratory arrest, staff "brought emergency equipment to administer an electric jolt" to the prisoner but did not know "how to operate the machine." *Id.*

Here, Plaintiff alleges that he was denied medical care for his hypertension, which may have caused him to feel light-headed and nauseated – far different from the extreme conduct in *Carlson* that led to the prisoner's death. (FAC at 12 ¶¶ 36-37; 17 ¶ 53.) Because of this difference in factual context, the Court must conduct an alternative-remedies and special-factors analysis. In so doing, the Court finds that a *Bivens* remedy is inappropriate for Plaintiff's failure to treat claim. First, Plaintiff utilized alternatives to remedy his medical concerns, i.e., his letters to and responses from the Warden. This counsels against extending a *Bivens* remedy. Moreover, as discussed above, Congress's failure to create a private right of action for damages indicates that *Bivens* should not be so extended. *See, e.g., Williams,* 2018 WL 5777365, at *8. Further, as discussed in more detail below, Plaintiff's allegations regarding denial of medical care are insufficient to state a claim for deliberate indifference under the Eighth Amendment. Even accepting, *arguendo,* that his medical need was objectively serious, Plaintiff fails to plausibly allege that any Defendant was deliberately indifferent to his medical need.

While some courts have indicated a possible willingness to extend *Bivens* to other claims for denial of medical care (*see, e.g., Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1169-70 (E.D. Cal. June 15, 2018), *report and recommendation adopted*, 336 F. Supp. 3d 1159 (E.D. Cal. Oct. 1, 2018) (finding that a plaintiff alleging a delay in receiving an x-ray may sue pursuant to *Bivens*, although the allegations there failed to state a valid Eighth Amendment claim); *Self v. Warden, MCC*, 2019 WL 497731,

at *4 & n.4 (S.D. Cal. Feb. 8, 2019) (presuming for purposes of screening, that inadequate medical care claims arising before conviction and sentence, are not "different in a meaningful way" from that found in *Carlson*)), other courts have recognized that different medical allegations present a new context from *Carlson* and have refused to extend *Abassi*. *See, e.g., Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 65 (E.D.N.Y. 2017) (declining to imply a *Bivens* remedy after finding that the medical claim allegations were so different from the facts in *Carlson* that the context was new). The analysis in *Gonzalez* is persuasive. There, the court found the medical claims at issue – denial of dental hygiene supplies and failure to receive shoes with adequate muscle support – to be "so dissimilar such that the context is new . . ." *Id.* at 65. In finding extension of *Bivens* to be inappropriate for such a new medical treatment claim, the court in *Gonzalez* further found that the plaintiff had the prison's administrative remedies available to him, and other special factors (particularly Congress's failure to add a damages remedy in the PLRA) counseled against extension of the remedy. In addition, the court noted the lack of objective merit of the vague and conclusory medical claims, which "merge to weigh against the creation of a *Bivens* remedy." *Id.*

Similarly, here, the Court finds that (i) Plaintiff's medical treatment claim allegations present a new context because they are distinguished from *Carlson* in their type and severity; (ii) alternative remedies were available to Plaintiff; (iii) other factors including Congress's inaction counsel against extending *Bivens*; and (iv) Plaintiff has failed to present sufficient allegations of deliberate indifference for an Eighth Amendment claim. For these reasons, a *Bivens* remedy should not be extended for Plaintiff's Eighth Amendment medical treatment claims.

## 2. Rule 12(b)(6) Analysis

### a. First Amendment – Denial of Communications

Assuming *arguendo* that Plaintiff could bring a *Bivens* claim for violation of any of his First Amendment rights, the FAC must plead that Plaintiff has a

constitutionally protected right and that a federal official violated this right. *See Abbasi*, 137 S. Ct. at 1854 (summarizing the historical context of *Bivens* claims). Here, Plaintiff claims that Defendants denied him "visits and telephone calls" over a 35-day period, during which Plaintiff was confined to his cell. (FAC at 12 ¶ 36; 15 ¶ 45; 17 ¶ 53.)

"It is clear that the First Amendment right of free speech applies within prison walls" and restrictions placed on a prisoner's ability to "communicate with persons outside prison walls" may violate the First Amendment. *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002). However, a prisoner's right to telephone access is "subject to reasonable security limitations." *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). Prisoners do not have an unfettered right to visitation. "Some curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Limitations on visits are permissible if they bear a rational relation to "legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Only where all visitation privileges have been revoked permanently or for a substantial period of time will the deprivation take on constitutional proportions. *See Overton*, 539 U.S. at 130; *Dunn v. Castro*, 621 F.3d 1196, 1204 (9th Cir. 2010). The length of any deprivation is relevant to determining whether the deprivation amounts to punishment. *See generally, Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205, 1212-13 (9th Cir. 2008). Accordingly, to assert a violation of his First Amendment right to free speech, Plaintiff must plausibly allege that the deprivation was not reasonably related to a legitimate penological interest, that the deprivation was substantial or permanent, and that Plaintiff had no alternative means of communication.[9]

---

[9] To the extent that Plaintiff is asserting a violation of the Due Process Clause of the Fourteenth Amendment, that Clause does not guarantee unfettered visitation. *See Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989). With regard to freedom of association, "an inmate does not retain rights inconsistent with proper incarceration," and "freedom of association is among the rights least compatible with incarceration." *Overton,* 539 U.S at 131. In the prison context, some curtailment of that freedom must be expected. *Id.*; *Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir.

In the FAC, Plaintiff alleges that he was denied visits and phone calls for approximately 35 days, beginning August 21, 2015. (FAC at 12 ¶ 36; 17 ¶ 53.) The allegations of the FAC show that all communications were not denied. *Cf. Overton*, 539 U.S. at 130, 134 (upholding prison regulation that prohibited prisoners who had committed multiple substance abuse violations from receiving any visitors except attorneys and clergy members for a period of two years); *Valdez*, 302 F.3d 1039, 1048 (upholding a four-and-one-half month telephone-access restriction imposed on a pre-trial detainee). Plaintiff alleges that he communicated with his attorney in August 2015 and in September or October 2015. (FAC at 10 ¶ 28; 13 ¶ 41.) He alleges that he and his case manager communicated in August 2015 and "[b]etween July 30, 2015 and October 10, 2015." (*Id.* at 9 ¶ 27; 11 ¶ 32.) Plaintiff also alleges that he submitted written requests to prison officials in late August and early September 2015. (*Id.* at 11-12.) These allegations illustrate that Plaintiff was not restricted from all forms or means of communication, and his communications privileges were not permanently revoked. (*Id.* at 10-13.)

Given these allegations, Plaintiff has failed to state a cognizable claim that Defendants violated his First Amendment right to free speech. *See Valdez,* 302 F.3d 1039, 1047-49 (telephone usage limited to a daily phone call with attorney upon a written request did not violate plaintiff's constitutional rights); *Shallowhorn v. Molina,* 2011 WL 846094, at *5 (E.D. Cal. Mar. 8, 2011), *aff'd,* 572 Fed. App'x 545 (9th Cir. 2014) (allegation of a six-month prohibition on all visitation with his minor children did not sufficiently describe a loss of visitation privileges to establish the existence of a federal constitutional right).

### b. First Amendment – Denial of Religious Material

In the FAC, Plaintiff alleges that Defendants refused to provide "religious reading material" during his 35-day confinement. (FAC at 12 ¶ 36; 17 ¶ 53.) The

---

2002) ("The loss of the right to intimate association is simply part and parcel of being imprisoned for conviction of a crime").

Free Exercise Clause of the First Amendment is implicated when prison officials prevent a prisoner from engaging in conduct that he sincerely believes is consistent with his faith. *See Shakur v. Schriro,* 514 F.3d 878, 884-85 (9th Cir. 2008) (citing *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) ("to implicate the Free Exercise Clause, a belief must be both sincerely held and rooted in religious belief") (internal quotations omitted)). However, Plaintiff does not allege that he has a belief that is both sincerely held and religious in nature, that Defendants prevented him from engaging in conduct consistent with his sincerely-held belief, or that a substantial burden on the exercise of his religion resulted. Plaintiff alleges only that Defendant Ives temporarily refused to provide him with a Bible. (FAC at 12 ¶ 36.) This is insufficient, and Plaintiff has thus failed to state a Free Exercise claim. *Cf. Wolcott v. Bd. of Rabbis of N. & S. Cal.*, 738 Fed. App'x 538 (9th Cir. 2018) (plaintiff's allegations that his possession and use of Jewish artifacts were restricted, that such restrictions prevented him from fulfilling the commandments of the Jewish faith, and that a substantial burden on his exercise of Judaism resulted, were sufficient to order an answer).

### c. First Amendment – Retaliation

In a civil rights action premised on retaliation, a "plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action." *Hartman v. Moore*, 547 U.S. 250, 259 (2006). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1095 n.9 (9th Cir. 2009) (citation omitted). To state a First Amendment retaliation claim, a prisoner must allege: "(1) a state actor took an adverse action against him; (2) because of; (3) the prisoner's protected conduct, and that the action taken against him; (4) chilled the prisoner's exercise of his First Amendment rights; and (5) did not reasonably advance a legitimate correctional

1  goal." *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011) (citing *Rhodes v.*

2  *Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

3       Plaintiff alleges that BOP "employees deliberately seized and confiscated [ ]

4  plaintiff's legal files in retaliation for plaintiff exercising his 1st Amendment right of

5  access to the court;" that, "motivated by retaliation," Defendants "denied plaintiff [ ]

6  reasonable access to legal/general correspondence, access to the courts, access to

7  legal materials necessary to file his parole appeal, legal writing materials, visits,

8  telephone, administrative remedy procedure, exercise, medical care, or religious

9  reading materials;" and "motivated by retaliation obstruct[ed] the delivery or

10  destruction of plaintiff's outgoing 'Legal-Mail' (package) containing his Parole

11  Appeal." (FAC at 14 ¶ 43; 17 ¶ 53; 20 ¶ 59.)

12       However, Plaintiff does not plausibly allege that Defendants "chilled" the

13  exercise of his First Amendment rights.  As discussed herein, during the relevant time

14  period, Plaintiff communicated with his attorney and his case manager and sent

15  written requests to the warden and other prison officials.  While Plaintiff repeats

16  allegations that Defendants "conspired to injure" and "intended to injure" him, he

17  provides no facts alleging any actual injury.  (*Id.* at 17 ¶ 53; 18 ¶¶ 54-55; 19 ¶¶ 56-

18  57; 21 ¶¶ 61-62; 22 ¶¶ 63-64.)  To the extent that Plaintiff may be alleging that

19  because of Defendants' retaliation he was falsely imprisoned, deprived of an early

20  termination hearing, and required to submit to drug testing, this Court found and the

21  Ninth Circuit affirmed that Plaintiff knowingly entered into his parole violation

22  agreement, waived his right to appeal, and waived his right to challenge the drug-

23  alcohol aftercare condition.  *See Martinez v. Langford, et al.,* Ninth Circuit No. 17-

24  56818; CACD No. CV 16-360 (ECF No. 54) (citations omitted).  Further, Plaintiff's

25  lists of general and conclusory allegations do not plausibly demonstrate a connection

26  between any Defendant's alleged retaliatory conduct and Plaintiff's subsequent

27  injury. *See Hartman*, 547 U.S. at 259.

28

### d. First Amendment – Denial of Administrative Remedies

Plaintiff alleges that Defendants denied him access to the BOP's administrative remedies. (FAC at 3). However, Plaintiff's allegations contradict this claim because he also alleges that he sent written requests and prison officials responded. Thus, Plaintiff alleges that "[b]etween July 30, 2015 and October 10, 2015," (1) "plaintiff spoke to his Case Manager, Ms. Grover, and explained that he needed to file his Parole Appeal, and that he was illegally transferred to USP Victorville;" (2) "plaintiff submitted numerous written requests to defendant's (sic) Sylvester and Academia, requesting 'Inmate Grievance forms, Parole Appeal Forms', envelopes for Legal-General correspondence;" (3) "plaintiff submitted numerous requests to defendant's (sic) Richard Ives, Sylvester, Academia and Abed Oudeh, requesting Inmate Grievance Forms, Parole Appeal Forms, access to legal reference materials, envelopes for Legal and General Correspondence;" and (4) "submitted numerous written requests to defendant Richard Ives on 08/25/2015, 08/29/2015, 09/03/2015, specifically requesting medical services, religious reading material (Bible), legal general correspondence, envelopes, access to the courts, legal reference materials, visits, phone calls, exercise, access to Administrative Remedy Procedure, etc." Plaintiff alleges that his "requests" were denied. (*Id.* at 11-12.)

While prisoners have a First Amendment right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005), they do not have a "separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Mitchell v. Marshall*, 2012 WL 2373665, at *7 (C.D. Cal. June 21, 2012) (quoting *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)).

To the extent that Plaintiff is asserting that Defendants have violated his First Amendment right to petition the government for a redress of grievances, Defendants' actions did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto,* 405 U.S. 319, 321 (1972). His *pro se* invocation of the judicial process underscores his ability to seek redress. Plaintiff therefore fails to state a claim that Defendants violated his First Amendment right to petition for redress. Further, none of Plaintiff's claims has been dismissed for failure to exhaust administrative remedies.

Plaintiff's pleadings also express his disagreement with being housed in a maximum security prison. Plaintiff alleges that in a conversation with his case manager, she "told plaintiff that she would 'put him in for a 4-month halfway house placement, and that nothing could be done about his placement at USP Victorville because he was too close to a release date.'" (*Id*. at 11 ¶ 32.) Plaintiff's FAC further alleges that during the pendency of this action, he was transferred to "the minimum security prison at Lompoc, California, where Plaintiff stayed for a transitional period of 60 days before being transferred to the Residential Re-Entry Center, Turning Point, Salinas, Ca. Plaintiff remained at the Turning Point Facility until his release from custody on April 8, 2016." (*Id*. at 7-8 ¶ 14.) Consequently, although the remedy process may not have functioned as quickly as Plaintiff would have liked, he ultimately received the remedy he sought. Accordingly, Plaintiff has failed to allege a federal constitutional violation with respect to the BOP administrative remedies.

### e. First Amendment – Denial of Access to Courts, Legal Materials

Plaintiff alleges that Defendants denied him "reasonable access to legal/general correspondence, access to the courts, access to legal materials necessary to file his parole appeal, legal writing materials." (FAC at 12 ¶¶ 35-36; 17 ¶ 53.) To state a claim that Defendants' denial of his requests for "legal materials" violated his federal constitutional right of access to the courts, he must show that he suffered an "actual injury" that was caused by Defendants' actions. *See Lewis v. Casey*, 518 U.S.

343, 354-55 (1996).  To establish an "actual injury," Plaintiff "must show that official acts or omissions 'hindered his efforts to pursue a [non-frivolous] legal claim.'" *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009) (quoting *Lewis*, 518 U.S. at 351 (alteration in original)).  A prisoner's right of access to the courts is limited to "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 3; *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his *Bounds* claim."); *Simmons v. Sacramento Cty. Superior Court*, 318 F.3d 1156, 1159-60 (9th Cir. 2003) (explaining that "a prisoner has no constitutional right of access to the courts to litigate an unrelated civil claim"). As the Supreme Court stated in *Lewis* (explaining its earlier decision in *Bounds*): "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." 518 U.S. at 355.

The Supreme Court has "made clear" that prisoners are guaranteed "no particular methodology [in accessing the courts], but rather the conferral of a capability – the capability of bringing contemplated challenges." *Phillips*, 588 F.3d at 655.  Moreover, the Ninth Circuit has held that the Supreme Court's opinion in *Bounds v. Smith*, 430 U.S. 817, 824-25 (1977), requires only that prison officials provide resources adequate to "meet minimum constitutional standards sufficient to provide meaningful, though perhaps not 'ideal,' access to the courts." *Phillips*, 588 F.3d at 656.  It is true that *Bounds*, 430 U.S. at 824-25, stated, "It is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents."  However, the Supreme Court subsequently made it clear that the lack of paper or pens alone is not enough to state a claim for denial of access to the courts. Rather, a prisoner must also set forth factual allegations showing that Defendants' "acts or omissions 'hindered his efforts to pursue a [non-frivolous] legal claim.'" *Phillips*, 588 F.3d at 655 quoting *Lewis*, 518 U.S. at 351 (alteration in original)); *see*

*also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (affirming dismissal of a pretrial detainee's access to the courts claim where the detainee "failed to present any evidence indicating that he had been injured in any way by his inability to participate in 'law library activities'") (citing *Lewis*, 518 U.S. at 351).

In the present case, Plaintiff does not allege any facts that show that denial of legal materials resulted in prejudice to his bringing any non-frivolous challenge to his sentence or conditions of confinement before the courts. To the contrary, Plaintiff alleges: (1) "he immediately notified . . . his court appointed attorney, Julia Summers, that his custody-security level was incorrect and statutory law prohibited his transfer to a maximum-security prison;" (2) he also notified his lawyer, Julia Summers, that prison officials confiscated his legal files, made threats against him for exercising his constitutional rights, and that his transfer to USP Victorville was illegal; (3) he submitted various requests to prison officials regarding the conditions of his confinement; and (4) "[b]etween September and October 2015, he obtained Parole Appeal Form 28 I-22 from his Lawyer, Julia Summer." (FAC at 10 ¶ 28; 12 ¶¶ 35, 36, 37; 13 ¶ 41; 14 ¶ 43.) Plaintiff also alleges that he prepared and submitted for filing his parole appeal. (*Id*. at 13-14 ¶ 41.)[10]

Accordingly, Plaintiff's factual allegations, even construed liberally, fail to allege that Plaintiff suffered an "actual injury" to any challenge to his sentence or conditions of confinement. *See, e.g., Rose v. Montana*, 422 Fed. App'x 631, 631-32 (9th Cir. 2011) (finding the district court properly dismissed plaintiff's "access-to-

---

[10] Plaintiff also alleges that Defendants obstructed the delivery or destruction of plaintiff's mail addressed to USPC National Appeals Board. (FAC at 20 ¶ 58.) However, as discussed below, he does not allege what any Defendant did to obstruct the delivery, and he does not allege when, where, or how the alleged obstruction took place. Plaintiff's allegations assume that Defendants must have tampered with his mail because it did not reach its intended destination – without plausible, specific allegations to support the conclusion of tampering or obstruction by Defendants. In addition, the Ninth Circuit has found that the "revocation proposal unequivocally informed Martinez that his acceptance of the proposal waived his right to appeal." *Martinez v. Langford, et al.*, Ninth Circuit No. 17-56818; CACD No. CV 16-360 (ECF No. 54). Thus, Plaintiff cannot allege any harm from an alleged failure of any appeal letter to reach the USPC.

courts claims because either they pertained to state law tort causes of action, or Rose failed to allege facts showing how defendants' acts hindered his efforts to pursue challenges to his criminal conviction or prison conditions"); *Terry v. Cal. Dep't of Corr. & Rehab.*, 2013 WL 1561432, at *4 (C.D. Cal. Mar. 7, 2013) ("the right of state prisoners to access the courts is not absolute; rather, it is limited to allowing prisoners the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts" and "[a] prisoner has no right to court access for any other type of action") (citing *Lewis*, 518 U.S. at 355) (internal quotation marks omitted)).

### f. Eighth Amendment – Inadequate Medical Care

An Eighth Amendment claim for inadequate medical care "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This includes both an objective standard – that the deprivation was serious enough to constitute cruel and unusual punishment – and a subjective standard – deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation marks and citation omitted). To meet the objective element of a deliberate indifference claim, "a prisoner must demonstrate the existence of a serious medical need." *Colwell*, 763 F.3d at 1066. "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (internal quotation marks omitted).

Here, Plaintiff alleges that he had been diagnosed with hypertension. He was fed a steady diet of bologna and cheese sandwiches, and this "high sodium diet" caused "light headiness (sic) and nausea." (FAC at 12.) Plaintiff also notes that he is "a chronic care patient" (*id*. ¶ 36) and was "prescribed medications" for high blood pressure (*id*. ¶ 37), but he fails to allege facts that plausibly show a serious medical need in this regard. Plaintiff's allegation that he was denied medical care is simply included in his laundry list of conclusory allegations that Defendants denied him

"reasonable access to legal/general correspondence, access to the courts, access to legal materials necessary to file his parole appeal, legal writing materials, visits, telephone, administrative remedy procedure, exercise, medical care, or religious reading materials . . . ."  (FAC at 17 ¶ 53; *see also id*. at 12 ¶ 36; 15 ¶ 45.)

Even if the Court were to find that the subjective allegations of "light headiness and nausea" are sufficient to constitute a serious medical need, Plaintiff has failed to allege that any Defendant acted with deliberate indifference toward Plaintiff's complaints.  To establish the subjective element of an Eighth Amendment claim, a prisoner must "demonstrate that the prison official acted with deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  In pleading deliberate indifference, a plaintiff must make plausible allegations "that the official was subjectively aware of the risk" and chose to disregard that risk.  *Farmer v. Brennan*, 511 U.S. 825, 829 (1994).  Deliberate indifference requires "obduracy and wantonness."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  It is conduct that is reckless and that evinces a knowing, conscious disregard.  *Farmer*, 511 U.S. at 839.  A prison official is "deliberately indifferent" if that official is "subjectively aware of the risk and does nothing to prevent the resulting harm." *Jeffers v. Gomez*, 267 F.3d 895, 913 (9th Cir. 2001) (citing *Farmer*, 511 U.S. at 828-29).  To be subjectively aware of a risk, the prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Thus, an inadvertent failure to provide adequate medical care, negligence, a mere delay in medical care (without more), or a difference of opinion over proper medical treatment, all are insufficient to constitute an Eighth Amendment violation.  *See Estelle*, 429 U.S. at 105-07; *Toguchi*, 391 F.3d at 1059-60; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Construed in the light most favorable to him, Plaintiff's factual allegations fail to lead to a plausible inference that any Defendant's denial of medical care rose to

conduct that evinced "a knowing, conscious disregard" of Plaintiff's serious medical need. *Farmer*, 511 U.S. at 839. Accordingly, the Court finds that the allegations in Plaintiff's FAC are insufficient to nudge Plaintiff's Eighth Amendment claims against Defendants "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### g.  Eighth Amendment – Inadequate Exercise

In *Allen v. Sakai*, 48 F.3d 1082, 1087-88 (9th Cir. 1994), the Ninth Circuit held that a prisoner's Eighth Amendment rights were violated when he was confined to his cell for six weeks with only 45 minutes of outdoor exercise per week. It follows, therefore, that Plaintiff's allegation that he was confined to his cell 24 hours a day for 35 days might support an Eighth Amendment claim. However, in *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997), the Ninth Circuit held that "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." When the denial of outdoor exercise is temporary, to state an Eighth Amendment claim, a plaintiff must show adverse medical effects. *See Lopez v. Smith*, 203 F.3d 1122, 1133 n.15 (9th Cir. 2000). (Where a plaintiff "allege[s] a deprivation longer than the one in *Allen*" – a six-week period in which the inmate exercised outdoors for 45 minutes per week – "it qualifies as long term.") *Id.* Here, Plaintiff alleges a deprivation of approximately thirty-five days. Because this period does not exceed the deprivation in *Allen*, it does not qualify as long term, and Plaintiff is required to "show adverse medical effects." *Tarabochia v. Clatsop Cty. Or.*, 646 Fed. App'x 535, 537 (9th Cir. 2016).

Plaintiff alleges that he was ". . . confined to his cell (#130), 24-hours a day, without access to Legal/General Correspondence, legal reference materials necessary to prepare and file his parole appeal, telephone, exercise privileges . . . ." and that Defendants ". . . den[ied] plaintiff reasonable access to legal/general correspondence, access to the courts, access to legal materials necessary to file his parole appeal, legal writing materials, visits, telephone, administrative remedy procedure, exercise. . . ."

Plaintiff alleges that he experienced "symptoms of light headiness and nausea," but alleges these symptoms as related to his bologna and cheese diet, not to any prohibition on exercise.  (FAC at 12.)  Further, Plaintiff's FAC fails to allege in specific terms how each named Defendant is involved.  Plaintiff's second cause of action, in which the deprivation of exercise allegation is found, names eight Defendants, a litany of alleged deprivations, and a list of five alleged federal constitutional violations.  (*Id*. at 17 ¶ 53.)  There can be no liability under § 1983 unless there is some affirmative link or connection between a defendant's action and the claimed deprivation.  *See Rizzo v. Goode*, 423 U.S. 362 (1976).  Vague and conclusory allegations of official participation in civil rights violations – such as those in the FAC regarding inadequate exercise – are not sufficient to state a claim.  *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## B.   Plaintiff's Fourth Cause of Action – Placement in Maximum Security Prison

Plaintiff claims that Defendants fabricated or relied on false information to place Plaintiff in maximum security prison.  It is well established that prisoners have no constitutionally protected liberty interest in being housed at a particular facility.  *Olim v. Wakinekona*, 461 U.S. 238, 246 (1983).  The United States Constitution does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Meachum* v. *Fano,* 427 U.S. 215, 225 (1976), *accord Betterman v. Montana*, 136 S. Ct. 1609, 1617 n.9 (2016) ("a convicted defendant has no right to serve his sentence in the penal institution he prefers").  Moreover, prisoners have no liberty interest in their classification status.  *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).  Consequently, Plaintiff's challenge to his housing security designation is not a cognizable claim.

## C.   Plaintiff's Fifth Cause of Action – Placement in General Population

Plaintiff claims that Defendants placed Plaintiff in general population based on his race.  Specifically:

defendants Charles E. Samuels, Jr.; Richard Ives; Roan McCollough; A. Warren (CSW) and others unknown at this time, acting in concert and participation with them, did knowingly, willfully, unlawfully, intentionally and maliciously, with wanton disregard for plaintiff's safety, well-being and civil liberties, did conspire to injure, oppress, retaliate, threaten or intimidate plaintiff by using or employing practices, policies, directives, or procedures to classify plaintiff for placement in the general prison population based on his race as a 'Mexican' and geographical location and national origin, relating to 'Gang' affiliated groups in violation of plaintiff's Constitutional rights under the 1st, 5th, 8th, and 14th Amendments, 28 CFR § 551.90, Title 18 U.S.C. §§ 241-242, and constituted a violation of the Hobbs Act (extortion).

(FAC at 19 ¶ 57.)

To state a claim of invidious discrimination in violation of the Fifth Amendment, Plaintiff must show "that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676. Plaintiff alleges that "[d]uring the intake screening interview" Defendant Warren "advised plaintiff that he had to be classified with one of the 'Mexican Groups' in order for him to be placed in the general prison population." (FAC at 10 ¶ 30.) A prison classification based on race is "immediately suspect" and is subject to strict scrutiny. *Johnson v. California*, 543 U.S. 499, 499 (2005) (citations omitted). Prison officials must demonstrate that any policy based on race is "narrowly tailored" to serve a compelling government interest. *Id*. Thus, accepting Plaintiff's allegations as true and construing them in the light most favorable to him, it appears that Plaintiff has adequately alleged that a federal official violated Plaintiff's constitutionally protected right.

As stated above, the Supreme Court in *Davis* implied a *Bivens* remedy under the Fifth Amendment for an employee terminated by her federal official employer on account of her gender. Here, Plaintiff alleges that he was discriminated against by prison officials by being placed in general population based on his race. *Abbasi* counsels that "even a modest extension [of *Bivens*] is still an extension." *Abbasi*, 137

S. Ct. at 1864.  Consequently, Plaintiff's Fifth Amendment discrimination claim is a different Fifth Amendment discrimination claim compared to that in *Davis*.

Given that Plaintiff's claim presents a new context, the Court must engage in the "special factors" analysis.  *Id*. at 1849.  Federal regulations governing the Federal Bureau of Prisons expressly prohibit discrimination.  28 C.F.R. § 551.90 (2004) ("[BOP] staff shall not discriminate against inmates on the basis of race, religion, national origin, sex, disability, or political belief.  This includes the making of administrative decisions and providing access to work, housing and programs").  The alternative remedies available to Plaintiff here included the BOP's administrative remedy process; a writ of habeas corpus, *see Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979), *see also Abbasi*, 137 S. Ct. at 1873 (with respect to a conditions of confinement action, "the habeas remedy, if necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages"); an injunction requiring the warden to bring his prison into compliance with the regulation noted above; or other form of equitable relief.  Moreover, as discussed above, Congress's failure to create a private right of action for damages indicates that *Bivens* should not be extended.  *See, e.g., Williams*, 2018 WL 5777365, at *8. Because there are alternative remedies available to Plaintiff, and because the other special factors counsel against extension of *Bivens*, a remedy for Plaintiff's fifth cause of action should not be implied.

### D.   Plaintiff's Sixth Cause of Action – Failure to Protect

Construed liberally, Plaintiff's sixth cause of action alleges an Eighth Amendment claim for failure to protect.  Plaintiff alleges that Defendants "permitted the use of, or employed practices, policies, directives or procedures" that allowed Plaintiff to be placed in general population where he "would be placed in jeopardy of physical harm, threats, and extortion."  (FAC at 19 ¶ 57.)

"'Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'"  *Farmer*, 511 U.S. at 833 (quoting *Cortes-Quinones v.*

*Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the prison officials had a "sufficiently culpable state of mind," evincing deliberate indifference. *Farmer,* 511 U.S. at 834 (internal quotations omitted). "Deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835.  Moreover, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.  Deliberate indifference may be demonstrated by showing that the risk of harm was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" such that the defendant "must have known" about the risk. *Id*. at 842.

Plaintiff alleges that he was placed in the prison's general population and that Defendants knew that prisoners in general population were subject to being "extorted for money and commissary items by Unit and Yard Reps." (FAC at 24.)  Plaintiff further alleges that Defendants "permitted inmate 'Reps' to demand and collect rent payments from plaintiff to avoid physical harm." (*Id*. at 19 ¶ 57.) However, Plaintiff does not allege that he was personally a victim of extortion, only that he was told by other prisoners that "you have to run with the Pisa's or South-Siders, or Pay Rent, if you didn't pay Rent you will get Smashed off of the yard." (*Id*. at 10-11 ¶ 31.)[11]  Nor does Plaintiff allege that he was personally physically harmed, only that he was "placed in jeopardy of physical harm, threats, and extortion." (*Id*. at 19 ¶ 57.) Further, although Plaintiff alleges that Defendants were aware of extortion and its

---

[11]  In his objections to the Initial R&R (ECF No. 160 at 12, 14), Plaintiff asserts that he was forced to make extortion payments, but that is not stated in any allegations of the FAC. The objections themselves do not point to any allegation in the FAC in support of the assertion that Plaintiff made payments in response to the alleged extortion.

attendant dangers, he fails to allege any specific facts showing that an individual defendant was aware of a serious threat to Plaintiff and chose to ignore the risk. Plaintiff alleges that "other inmates" explained the rules of the yard to Plaintiff (*id.* at 10-11 ¶ 31) and that he "learned that prison officials" permitted extortion.  (*Id.*).

In his sixth cause of action, Plaintiff again names several Defendants and alleges that they, along with "others acting in concert and participation with them, did knowingly, willfully, unlawfully, intentionally, with wanton disregard and deliberate indifference for plaintiff's safety, well-being and civil liberties, did conspire to injure, oppress, threaten, intimidate, or cause plaintiff to be 'extorted.'" (*Id.* at 19 ¶ 57.)  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.  Plaintiff's conclusory allegations here fail to plausibly show that any individual defendant knew of and "disregarded an excessive risk" to his safety. *Farmer*, 51 U.S. at 844.  Accordingly, his sixth cause of action fails to state a claim.

## E.   Plaintiff's Seventh Cause of Action – Obstructing Mail

In a single conclusory allegation, Plaintiff alleges that Defendants knowingly obstructed his outgoing legal mail.  "Prison officials at USP Victorville confiscated plaintiff's outgoing legal mail to prevent delivery of his parole appeal to the USPC National Appeals Board."  (FAC at 13-14 ¶ 41.)

"A *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others." *Abbasi*, 137 S. Ct. at 1860.  "The purpose of *Bivens* is to deter the *officer*." *Id.* (quoting *FDIC v. Meyer*, 510 U.S. 471, 485 (1994)).  When a plaintiff alleges that multiple defendants did something, there must be enough information to show what each individual defendant did, and where and when each individual defendant did it. *See, e.g., In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1163 (D. Idaho 2011) ("Who? Twenty-three growers, including the moving grower defendants.  What? Met and agreed to reduce potato supply and fix prices.  When? Fall 2004.  Where? An office in Blackfoot, Idaho.").

Plaintiff alleges that "Charles E. Samuels, Jr.; Richard Ives; Roan McCollough; Chevon Sylvester; Abed Oudeh; Rachael Academia; and Jonathan Zunker, and others acting in concert and participation with them, did knowingly, willfully, unlawfully, intentionally and maliciously, did conspire, motivated by retaliation, to obstruct the delivery or destruction of plaintiff's outgoing 'Legal-Mail' [addressed to USPC National Appeals Board]." (FAC at 20 ¶ 58.) He does not allege what each Defendant did to "obstruct the delivery" or to destroy his mail, and he does not allege when, where, or how the alleged obstruction or destruction took place. Plaintiff's objections to the Initial R&R make clear that the "obstructing mail" claim is based on Plaintiff's assertion that his appeal letter did not reach the USPC National Appeal Board. From this, he surmises one of the Defendants obstructed the delivery of (or destroyed) Plaintiff's mail. (ECF No. 160 at 14.) That leap of logic does not establish plausibility of this claim. Plaintiff's allegations ask the Court to assume that each Defendant tampered with his mail because it did not reach its intended destination – without plausible, specific allegations to support this conclusion.

Moreover, in the parallel habeas action, the Ninth Circuit found that the "revocation proposal unequivocally informed Martinez that his acceptance of the proposal waived his right to appeal." *Martinez v. Langford, et al.*, Ninth Circuit No. 17-56818; CACD No. CV 16-360 (ECF No. 54). As a result, Plaintiff cannot allege any harm from an alleged failure of any appeal letter to reach the USPC National Appeals Board.

### F.   Other Claims

#### 1.   Plaintiff's Eighth, Tenth, and Twelfth Causes of Action – Early Parole Hearing

Plaintiff's eighth cause of action alleges that certain Defendants denied Plaintiff's right to a "timely" early parole termination hearing. (FAC at 20 ¶ 59.) Plaintiff's ninth cause of action alleges that certain Defendants falsely imprisoned him because his parole violation had been reversed. (*Id*. at 20-21 ¶ 60.) Concerning

1   Plaintiff's parole, the Ninth Circuit found that, "the hearing examiner at a hearing

2   held in 2000 stated that even had a parole termination hearing been held in 1995,

3   Martinez's parole would have continued for the general safety and welfare of the

4   public in light of the seriousness of his offense.   Furthermore, the Commission's

5   failure to hold a timely parole termination hearing does not entitle Martinez to

6   release, nor is Martinez currently eligible for a parole termination hearing because he

7   absconded and has not served on parole for five consecutive years." *Martinez v.*

8   *Langford, et al.,* Ninth Circuit No. 17-56818; CACD No. CV 16-360 (ECF No. 54)

9   (citations omitted).

10       Plaintiff's tenth cause of action alleges that certain Defendants imposed a drug-

11   alcohol aftercare condition as punishment.   (FAC at 21 ¶ 61.)   The Ninth Circuit

12   found, however, that "Martinez also waived his right to challenge to the special

13   parole drug-alcohol aftercare condition.   Even if not waived, we cannot say that by

14   imposing this condition, the Commission exceeded its statutory authority or acted so

15   arbitrarily as to deny Martinez due process." *Martinez v. Langford, et al.,* Ninth

16   Circuit No. 17-56818; CACD No. CV 16-360 (ECF No. 54) (citations omitted).

17       With respect to Plaintiff's twelfth cause of action (FAC at 22 ¶ 63) – claiming

18   that certain Defendants unlawfully imprisoned him when they imprisoned him

19   pursuant to repealed statutory and regulatory laws and under the authority of an

20   abolished agency – the Ninth Circuit found that Plaintiff's arguments were not valid.

21   "The cases that he cites analyzed inapplicable sections of the relevant statutes and in

22   no way undermine the Commission's authority over his parole.   To the contrary, this

23   court has applied 18 U.S.C. § 4211 of the Parole Act to individuals who, like

24   Martinez, committed an offense before November 1, 1987.   This court has further

25   concluded that the Parole Act did not change the law governing parole release

26   decisions, and therefore its application to prisoners convicted before the statute's

27   enactment does not violate the Ex Post Facto clause." *Martinez v. Langford, et al.,*

28

Ninth Circuit No. 17-56818; CACD No. CV 16-360 (ECF No. 54) (citations omitted).

*Abbasi* noted that some prisoners will have alternative relief in the form of a habeas petition. *See Abbasi*, 137 S. Ct. at 1863 ("Indeed, the habeas remedy, if necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages."). Here, Plaintiff filed such a petition for writ of habeas corpus on January 15, 2016. (*See* CACD No. CV 16-360, ECF No. 1.) This Court denied petitioner's petition, and the Ninth Circuit affirmed. Because the parallel claims in the eighth, tenth, and twelfth causes of action were analyzed and denied in connection with Plaintiff's habeas petition, they should also be dismissed here. *See Phillip Martinez v. Langford, et al.,* Ninth Circuit No. 17-56818; CACD No. CV 16-360 (ECF No. 54).

### 2. Plaintiff's Eleventh, Thirteenth, and Fourteenth Causes of Action – Refusal to Relocate to Northern California

Plaintiff's eleventh cause of action alleges that certain Defendants "refused plaintiff the right to relocate to Northern District of CA," but he alleges no supporting facts for this conclusory allegation. Further, Plaintiff alleges that he was released from BOP custody on April 8, 2016, and that on June 17, 2016, he resided in San Bruno, California, "approximately 18.2 miles, one-way" from "downtown San Francisco." (FAC at 16.) Consequently, Plaintiff has not plausibly alleged that he was prevented from moving to northern California.

A parole officer is entitled to absolute immunity for any claims for damages arising from the imposition of allegedly unconstitutional parole or probation conditions. *See Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004). The imposition of conditions of probation or parole is a "quasi-judicial" function for which probation or parole officials are entitled to absolute immunity. *Id.* at 1188-89. It is the nature of the function performed, not the role or identity of the actor that determines the scope of absolute immunity. *See, e.g., Engebretson v. Mahoney*, 724

F.3d 1034, 1039 (9th Cir. 2013) ("the Supreme Court has emphasized this functional approach for determining when public officials may claim absolute immunity under § 1983").  The Ninth Circuit has held that, where a specific condition was imposed as the result of "particularized and discretionary decisions by parole officers" as authorized by state law, the officers are entitled to absolute immunity from claims for damages. *Thornton v. Brown*, 757 F.3d 834, 839-40 (9th Cir. 2014); *Frantom v. White*, 627 Fed. App'x 613 (9th Cir. 2015) ("defendants were entitled to absolute immunity for imposing [GPS] monitoring as a condition of [plaintiff's] probation pursuant to their discretionary authority" under California law) (now citable for its persuasive value per Ninth Circuit Rule 36-3); *see also France v. Brown*, 2017 U.S. Dist. LEXIS 20183, at *5 (S.D. Cal. Feb. 13, 2017).  Thus, to the extent that Plaintiff attempts to state a federal civil rights claim against any Defendant acting as a parole officer for the imposition of conditions of Plaintiff's supervision, that Defendant is entitled to absolute immunity.

In his thirteenth cause of action, Plaintiff alleges that certain Defendants falsified an incident report with the intention of using the report "against plaintiff to suspend, obstruct or impede plaintiffs vested Constitutional right of access to the courts, and ability to establish 'pre-release plans' by cutting off communication with family and friends, and the ability to prepare legal documents." (FAC at 22.)  Yet, Plaintiff also concedes that he was "subsequently transferred to the Halfway House in Salinas, California." (*Id.* at 15.)  Consequently, Plaintiff has failed to plausibly allege a claim upon which relief may be granted.

Plaintiff's fourteenth cause of action alleges that "[plaintiff] believes that the John Doe defendants played a role in, or participated in concert with other named Defendants to cause plaintiff harm by retaliation, or violating his civil rights." (*Id.* at 22-23.)  Even if the defendant's name is unknown, Plaintiff must plausibly allege facts that a specific defendant, while acting under color of law, deprived him of a right guaranteed under the Constitution or a federal statute. *See West v. Atkins*, 487

U.S. 42, 48 (1988).   Plaintiff has not done so here, and he has failed to state a cognizable claim in the fourteenth cause of action.

### G.   Rule 8

Rule 8(a) states:

> A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Further, Rule 8(d)(1) provides: "Each allegation must be simple, concise, and direct.  No technical form is required."  (Emphasis added).  Although the Court must construe a *pro se* plaintiff's pleadings liberally, a plaintiff nonetheless must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what plaintiff's claims are and the grounds upon which they rest.  *See, e.g., Brazil v. United States Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991) (complaint must give defendants fair notice of the claims against them).  If a plaintiff fails to clearly and concisely set forth allegations sufficient to provide defendants with notice of which defendant is being sued on which theory and what relief is being sought against them, the complaint fails to comply with Rule 8.  *See, e.g., McHenry v. Renne*, 84 F.3d 1172, 1177-79 (9th Cir. 1996); *Nevijel v. North Coast Life Ins. Co*., 651 F.2d 671, 674 (9th Cir. 1981).  A claim has "substantive plausibility" if a plaintiff alleges "simply, concisely, and directly [the] events" that entitle him to damages.  *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014) (per curiam).  Moreover, failure to comply with Rule 8 constitutes an independent basis for dismissal of a complaint that applies even if the claims in a complaint are not found to be wholly without merit. *See McHenry*, 84 F.3d at 1179; *Nevijel*, 651 F.2d at 673.

Defendants are entitled to fair notice of what the claims are and the basis for such claims. *See, e.g., Brazil*, 66 F.3d at 199; *McKeever*, 932 F.2d at 798. "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations. They are unacceptable." *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456 (C.D. Cal. June 30, 2010).

As the Court has stated above, the individual claims in Plaintiff's FAC contain groups of defendants and lists of factual allegations and multiple constitutional or legal violations. This puts Defendants and the Court in the position of having to "sift through" the claims attempting to match individual Defendants with factual allegations and alleged violations. *See Pinzon v. Jensen,* 2009 WL 231164, at *2 (E.D. Cal. Jan. 30, 2009). The Court has spent substantial time reviewing the FAC. After discerning Plaintiff's factual allegations and the essence of the relief he seeks, the Court was able to evaluate each claim pursuant to *Bivens* and Rule 12(b)(6). However, the Court was largely unable to match each Defendant with the specific claim(s) and alleged conduct that Plaintiff purports to allege against him or her. Further, and as discussed above, to the extent that Plaintiff is attempting to allege any conspiracy, his FAC fails. Plaintiff's conclusion that Defendants "did conspire" is repeated throughout the FAC within the same phrase: "acting in concert and participation with others, did knowingly, willfully, unlawfully, intentionally, with wanton disregard for plaintiff's civil liberties, did conspire to injure, oppress, intimidate and retaliate against plaintiff." This phrase amounts to nothing more than a "formulaic recitation of the elements." (*See* FAC at 2, 17-22); *Twombly*, 550 U.S. at 555.

To state a conspiracy claim, a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation. *See Gilbrook v. City of Westminste*r, 177 F.3d 839, 856-57 (9th Cir. 1999); *Lacey v. Maricopa Cty.*,

693 F.3d 896, 934-935 (9th Cir. 2012) (to establish civil conspiracy, plaintiff must show that the conspiring parties reached unity of purpose or common design and understanding, or meeting of the minds in unlawful agreement). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Gilbrook*, 117 F.3d at 856. "As with [plaintiff's] other claims, [his] allegations of conspiracy must satisfy *Iqbal*" and *Twombly*. *Lacey*, 693 F.3d at 935. Accordingly, merely alleging "parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556-57. Indeed, the Supreme Court has made clear that, without more, "parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id*. Plaintiff has failed to properly allege any conspiracy among the many named Defendants. He does not, for example, identify a point of agreement or a shared intent to violate his rights, as is required. Nor does he identify any specific act that any of the named Defendants committed in furtherance of the supposed conspiracy. Rather, he identifies a number of purported violations that he claims to have suffered and presents conclusory allegations that some or all named Defendants conspired with each other to commit the purported violations.

In short, Plaintiff's factual allegations in support of his causes of action are neither sufficient to meet the *Iqbal/Twombly* plausibility standard nor do these allegations comply with Rule 8's fair notice requirement.

Plaintiff has been apprised of the requirements of Rule 8 in three prior Orders (ECF Nos. 26, 28, 37), he has been provided with five opportunities to amend his pleadings, and Plaintiff's FAC once again fails to give fair notice to the Defendants of the legal or factual grounds for Plaintiff's claim or claims. It would be very difficult (and in some instances, impossible) for Defendants to discern what specific factual allegations or legal theories apply to the claim or what claims that Plaintiff is purporting to raise against each of them, and as a result, it would be very difficult (or

impossible) to formulate applicable defenses.  Despite having been provided with many opportunities to amend his deficient pleadings, Plaintiff's FAC fails to meet the minimal requirement that a complaint allow the defendants to discern "what [they] are being sued for."  *McHenry*, 84 F.3d at 1177; *see also Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level").  Accordingly, the FAC should be dismissed for failure to comply with Rule 8.  *See, e.g., McHenry*, 84 F.3d at 1179 (failure to comply with Rule 8 constitutes an independent basis for dismissal even if the claims in a complaint are not wholly without merit).

## H. Leave to Amend

Because Plaintiff is appearing *pro se*, the Court has construed the allegations of the FAC liberally and afforded Plaintiff the benefit of any doubt.  That said, the Supreme Court has made clear that the Court has "no obligation to act as counsel or paralegal to *pro se* litigants."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("courts should not have to serve as advocates for *pro se* litigants").  In addition, the Ninth Circuit has emphasized that a plaintiff must plead sufficient factual allegations, assumed to be true, to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  While a plaintiff need not plead the legal basis for a claim, the plaintiff must allege "simply, concisely, and directly events" that are sufficient to inform the defendants of the "factual basis" of a claim.  *City of Shelby*, 135 S. Ct. at 347.

Plaintiff has been apprised of the deficiencies in his pleadings on three prior occasions and has been provided five opportunities to amend his pleadings.  Because Plaintiff's FAC once again fails to state any claim upon which relief may be granted, does not allege any viable *Bivens* claim, and does not comply with the fair notice requirements of Rule 8, it has become absolutely clear that Plaintiff will not be able

to correct the deficiencies in his pleading.  *See, e.g., Gottschalk v. City & Cty. of San Francisco*, 964 F. Supp. 2d 1147, 1156-57 (N.D. Cal. 2013) (granting defendants' motion to dismiss for failure to comply with Rule 8 and the court's orders to correct deficiencies in earlier pleadings after *pro se* litigant filed a third amended complaint that was incomprehensible, failed to identify the specific basis of liability for each defendant, and failed to identify the legal and factual basis for the claims).

The Court therefore recommends that this action be dismissed without further leave to amend for failure to state a claim. *See Noll*, 809 F.2d at 1448 (holding that a *pro se* litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment).

## V.   PLAINTIFF'S ARGUMENTS REGARDING ALLEGED COLLUSION AND HIS REQUEST FOR RECUSAL

In his recent opposition, Plaintiff argues that the Motions to Dismiss should be denied because the undersigned Magistrate Judge has allegedly "colluded" with Defendants.  (ECF No. 163 at 4-6.)  The Court finds this to be meritless.  There has been no collusion with government counsel concerning the briefing or filing of the Motions to Dismiss or on any other issue.  As a further argument, Plaintiff contends that the undersigned Magistrate Judge should recuse himself from Plaintiff's civil rights case because of alleged judicial bias, impartiality and unfairness.  (*Id*.)  The Magistrate Judge is aware of no ground that would mandate his recusal here, but that issue will be addressed by the District Judge.

## VI.   RECOMMENDATION

**IT THEREFORE IS RECOMMENDED** that the District Judge issue an Order: (1) accepting and adopting this Amended Report and Recommendation; (2) granting Defendants' Motions to Dismiss (ECF Nos. 127, 156, 157) as set forth

///

///

///

1  herein; and (3) dismissing the Fifth Amended Complaint without further leave to

2  amend and with prejudice.

3

4  DATED:  8/20/2019

5  _____

6  ALEXANDER F. MacKINNON

7  UNITED STATES MAGISTRATE JUDGE